[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. The Dissolution of the Marriage
It is found that all of the allegations of plaintiff's complaint have been proven, that the marriage has broken down irretrievably, and the marriage is ordered dissolved for that reason.
II. The Determination of Disputed Values of Property
A. Siracusa Moving and Storage Company, Inc.
This company, established in 1978 by the defendant and incorporated in 1984 with the parties as sole stockholders, is engaged in the moving and storage of commercial and residential property.
In testifying for the plaintiff Stephen L. Vecchitto a CPA who in the past has been a qualified witness before this Court, explained in extensive detail his method of arriving at the fair market value of the business. His approach utilized both the capitalization of earnings and capitalization of excess earnings methods, giving more weight to the former. When using the capitalization of earnings method he made certain adjustments to the income of the company before taxes for the five-year period ending on December 31, 1990. These adjustments, which are set forth in detail in Table 4 of plaintiff's Exhibit A, included such additions to income as depreciation, contributions and entertainment and such reductions as interest and dividends. His conclusion was that CT Page 8810 the company was valued at $1,023,000. Gary P. Schillo, a CPA with the firm of Harper and Whitfield, testified as to the value of the business on behalf of the defendant. He had not prepared a report of his own findings, but based his conclusions on an analysis and critique of Mr. Vecchitti's opinions. While he basically adopted Mr. Vecchitti's formula, he stated that the only adjustment to the company's annual income for the five-year period which he would make was the "adding back" of depreciation to those figures. After making that change, he valued the business at $673,000.
In this Court's experience the question of what items to consider as appropriate additions to or deletions from a company's annual income in arriving at its adjusted normalized earnings is a common one. (See most recently Gozzo v. Gozzo, No. 341091 Hartford Superior Court decision July 30, 1991). After reviewing all the evidence, this Court finds that the capitalization of earnings method of evaluating a business should be employed in this instance, to the exclusion of the capitalization of excess earnings method. In addition it is found that on Table 4 of plaintiff's Exhibit A, contributions, Susan Siracusa's salary and the profit sharing plan should not have been added as an adjustment to the company's annual income. After making these deletions from the adjusted earnings of the company for each of the five years ending in 1990 and applying the results to Mr. Vecchitti's formula (see p. 14 of plaintiff's Exhibit A) it is determined that the business has a fair market value of $820,056, rounded off at $820,000.
For the purpose of determining the adjusted gross marital estate on hand for distribution, it is found that the value of the business at the time of the marriage of the parties in 1982 was $23,408.
B. #14 Meadow Road, Glastonbury CT — Condominium
The parties are joint owners of a condominium at the above address. In their respective financial affidavits the plaintiff valued the property at $125,000 and the defendant at $110,000. No other evidence was submitted to the Court on this issue.
This Court finds the value of the condominium to be $117,500.
III. The Marital Assets of the Parties
Plaintiff CT Page 8811
One-half interest in No. 55 Stockade Road, Glastonbury CT $30,500 Total value $175,000 Less mortgage 114,000 ------- Total equity $ 61,000 One-half interest $ 30,500 One-half interest in No. 14 Meadow Road, Glastonbury CT $24,500 Total value $117,500 Less mortgage 68,500 ------- Total equity $ 49,000 One-half interest 24,500 1987 Toyota $ 5,000 Bank accounts 575 IRA 4,202 Life Insurance (C.S.V.) 1,000 Profit sharing plan 3,302 40% interest in S.M.S. due 328,000 ------- TOTAL: $397,079
Defendant
 One-half interest in No. 55 Stockade Road, Glastonbury CT $ 30,500 One-half interest in No. 14 Meadow Road, Glastonbury CT 24,500 Full interest in No. 600 East Street, New Britain CT No equity Bank accounts 1,953 Life Insurance (C.S.V.) — IRA 8,929 Profit sharing plan 8,643 Limited partnership — Sockeye Salmon Assn. 10,000 60% interest in S.M.S. due 492,000 ------- TOTAL: $576,525 Total marital estate $973,604 Less value of business at date of marriage — 23,408 ------- Adjusted gross value of marital estate $950,196
IV. A review and Evaluation of the Evidence in accordance with the Provisions of Sec. 466-84e C.G.S.
The plaintiff is thirty-four years of age and the CT Page 8812 defendant thirty-five. The parties met while both were attending Central Connecticut State College. Plaintiff, who was in an honors program in high school, majored in English and received good grades while in college. After defendant graduated from "Central" in 1979, he became employed at a moving concern and later established a similar business for himself. Plaintiff left college in the spring of 1980 without graduating and began work as a waitress at a fast food restaurant. In her spare time she assisted defendant in the development of his business. The parties became engaged on Christmas Eve, 1981 and were married on October 16, 1982. The following year plaintiff began devoting all of her time to the advancement of the moving business, serving as operations manager, hiring and firing employees, and working fifty to sixty hours per week. After the business was incorporated as Siracusa Moving and Storage Company, Inc. in 1984 plaintiff asked for and defendant agreed to give her forty percent of the stock in the company, with defendant owning the remaining 60 percent. About this time defendant's brother began working for the company and plaintiff thereafter devoted substantially all her time to the care of their home. She did obtain her real estate agent's license which she felt was of at least indirect assistance to defendant in the development of the moving business. In November 1985 the parties purchased a home and in May, 1986 their daughter Lauren was born. During this period defendant was almost completely involved with company business, resulting in there being little if any time for social life or vacations. Plaintiff was supportive of her husband's efforts and goals, and during these years the business prospered.
Causes for the dissolution — fault
It is difficult to determine why this marriage began to deteriorate. There is no evidence whatsoever of physical abuse or excessive use of alcohol on the part of either party and only inconsequential instances of acrimonious language. In the spring of 1988 defendant attended a convention of movers in Orlando, Florida without inviting his wife and two-year old daughter along. There is at least some merit to defendant's view that they would be an encumbrance if they attended. At any rate, when defendant called his wife two days after his arrival she was very upset. She stated that after his return home he continued his lack of involvement with the family. In summation it was plaintiff's view that defendant was a workaholic who had no interest in spending time with the family and that this contributed substantially to the break-up of the marriage.
In June, 1988 defendant told plaintiff he wanted to CT Page 8813 leave. When she suggested counselling he replied, "It just isn't going to work. This is not the direction I want my life to go." Thereafter, plaintiff twice attended counselling with defendant to no avail. At that time defendant told plaintiff that he had worked hard and wanted to do as he saw fit. About this time defendant left the family home, and in September, 1988 this action was commenced.
In defendant's testimony concerning the causes for the failure of the marriage he stated, "There was a lot of tension in our marriage. My wife had no respect for me or any member of my family. The home wasn't cared for — the checkbook wasn't balanced."
Wendy McAvoy, who commenced employment at defendant's company in 1984 and who has been manager since 1989, testified that she has had a romantic involvement with defendant since September, 1988, but no personal relationship with him before that time. On this subject plaintiff testified as follows: "I have no concrete knowledge that my husband had a relationship with Wendy McAvoy or with anyone else before our separation."
After sifting through the evidence relating to the causes for the dissolution, this Court concludes that fault on the part of neither party is a factor to be considered when distributing the marital estate.
Other factors not previously discussed
Both parties are in apparent good health. Plaintiff, who at the present time is not employed, devotes all of her time to the care of her daughter, who is presently in therapy, and of her home. Defendant has been paying her $892 per week for the support of her and their daughter. Defendant's business has suffered an understandable downturn in the present depressed economic climate, and he reports a current gross weekly income of $1,066 on his financial affidavit. While plaintiff has in the past worked as a waitress, she also received her real estate agent's license in 1984 and has had experience in the moving business. An English major, she completed three years of college where her grades were good. Defendant is the chief executive officer of a moving and storage company established by him about twelve years ago. The company revenue in 1990 was $4,109,401. While his business is presently in a "downturn", it was defendant's feeling that if long-term people could be attracted, the company could weather the present recession.
From the nature of the occupations and skills of the CT Page 8814 parties, it is concluded that defendant has a far greater opportunity than does plaintiff for the future acquisition of capital assets or income. On the other hand, the evidence is convincing that defendant, because of his complete dedication to a business which has enjoyed spectacular success since its establishment twelve years ago, has contributed the lion's share in the acquisition, preservation or appreciation in value of the marital estate. At this point it should also be mentioned that plaintiff at all times gave her full support to defendant while devoting her full time to the care of their child and home. In defendant's words plaintiff was "the best mother in the world."
After reviewing all the evidence as it relates to the provisions of Sec. 466-81c C.G.S. and after giving particular weight to such predominating factors as the disparity in income of the parties, their relative opportunities for the future acquisition of capital assets and income, and their comparative skills and employability, all the while bearing in mind the contributions of each of the parties in the acquisition and appreciation in value of their marital estate, this Court finds that the marital estate should be divided as follows:
 Plaintiff 53 percent Defendant 47 percent
V. The Distribution of the Marital Estate to the Parties in Accordance with the Findings in Paragraphs II and IV
The Court having previously determined that the gross marital estate is valued at $973,604 and that for purposes of distribution the adjusted gross value after subtracting the sum of $23,408 (the value of the business on the date of the marriage of the parties) is $950,196; it now establishes plaintiff's fifty-three percent interest at $505,604 and defendant's forty-seven percent interest at $446,592.
The following allocations of property are made in accordance with these findings: Plaintiff — $503,604 — 53%
Entire equity in No. 55 Stockade Road, Glastonbury CT $61,000

1987 Toyota 5,000 Bank accounts as per plaintiff's F/A 575
IRA " " " " 4,202
Life Insurance (C.S.V.) " " " " 1,000
Profit Sharing Plan " " " " 3,302
 -------
CT Page 8815
 Sub Total $ 75,079
Balance due from Defendant 428,525
 -------
 TOTAL: $503,604
Defendant — $446,592 — 47%
Entire equity in No. 14 Meadow Road,
 Glastonbury CT $ 49,000
Entire interest in No. 600 East Street,
 New Britain CT —
Bank Accounts as per defendant's F/A 1,953
Life Insurance " " " "
Profit Sharing Plan " " " " 8,643
IRA " " " " 8,929
Limited Partnership in
 Sockeye Salmon Assn. " " " " 10,000
Entire interest in Siracuse Moving and
 Storage Co., Inc. 820,000
 -------
 $898,525
 Less value of business at time
 of marriage — 23,408
 -------
 $875,117
 Less amount due plaintiff 428,525
 -------
 TOTAL : $446,592

Supplemental Orders with Reference to the Above Distribution
a) Defendant is ordered to convey all of his right, title and interest in premises situated at No. 55 Stockade Road, Glastonbury, Connecticut to plaintiff who in turn will hold defendant harmless with regard to all mortgages, taxes, and other encumbrances on said property.
b) Plaintiff is ordered to convey all of her right, title and interest in premises situated at No. 14 Meadow Road, Glastonbury, Connecticut to defendant who in turn will hold plaintiff harmless with regard to all mortgages, taxes and other encumbrances on said property.
c) Plaintiff is ordered to convey to defendant all of her interest in Siracusa Moving and Storage Company, Inc. and to transfer to defendant any stock in said company which may be in her possession.
d) Defendant is ordered to give plaintiff his promissory note in the amount of $428,525 which shall be secured by mortgage on both No. 14 Meadow Road, Glastonbury, Connecticut and CT Page 8816 No. 600 East Street, New Britain, Connecticut, as well as by a collateral assignment to plaintiff of 60% of defendant's stock in Siracusa Moving and Storage Company, Inc. Said note shall bear interest at the rate of 6% per annum and shall be payable in the following manner:
By the payment of the sum of $25,000 two months from date hereof, by the payment of the sum of $2,500 three months from date hereof and by the further payment of a like sum of $2,500 monthly thereafter until October 2, 1998, at which time all then remaining balances of principal and interest shall be fully due and payable.
e) Defendant will convey to plaintiff free from lien all his or his company's interest in the 1987 Toyota automobile presently operated by plaintiff.
VI. Orders Concerning the Minor Child — Lauren
a) Custody
Plaintiff shall have custody of the minor child, Lauren, with reasonable rights of visitation with the defendant.
b) Support
Defendant is ordered to pay for the support of the minor child Lauren the sum of $319 per week pursuant to the State Child Support guidelines.
c) Health Insurance
The defendant shall continue to maintain his present health coverage for the benefit of the minor child as the same is available through his employer. The parties shall share equally all unreimbursed medical, dental, pharmaceutical, orthodontic or ophthalmological expenses. The provision of Sec. 46b-84c shall apply.
VII. Orders Concerning the Plaintiff
a) Alimony
Here the Court has considered all of the provisions of Sec. 46b-82 C.G.S., as they apply to the evidence, in particular it is noted that the length of the marriage — almost nine years, that the parties have been separated since June, 1988 and that defendant has been providing for the plaintiff, as well as their child, since that time. On the CT Page 8817 evidence defendant is ordered to pay plaintiff as alimony the sum of $300 per week for a period of two years.
b) Life Insurance
Defendant is ordered to maintain his present policy with New York Life Insurance Company in the face amount of $250,000 with plaintiff as irrevocable beneficiary and with a prohibition against the further encumbering of said policy during such time as defendant shall be indebted to the plaintiff.
c) Health Insurance
Defendant shall maintain plaintiff on his medical insurance policy for the maximum period of time prescribed by law at defendant's cost and expense.
VIII. Other Orders
a) Other Personal Property
The parties shall retain exclusive title to and possession of all personalty and furnishings presently in their respective residences.
b) Liabilities
Each of the parties shall be solely liable for all liabilities listed on his or her financial affidavit and shall hold the other party harmless in that regard.
c) Counsel Fees
After reviewing the financial orders made by the Court in this matter, no award of counsel fees will be made by this Court to either party.
JOHN D. BRENNAN STATE TRIAL REFEREE